We're here to deal with the effect of a state court default judgment on dischargeability proceedings in bankruptcy. The particular state court default judgment resulted after the debtor had gone to federal prison for federal environmental crimes. He'd exhausted all of his resources in defending himself in the criminal case, as well as this underlying civil proceeding. Counsel petitioned to withdraw from the civil proceeding. Mr. Elias, because of his incarceration, was unable to defend himself personally, nor hire counsel to defend him, and the state district court then granted a default judgment on account of him not—the rules of procedure in Idaho allow for a default judgment to be entered when counsel's gone and no further proceedings occur. Quite a sizable judgment. Twenty-three point four million dollars. The underlying nature of this judgment grows out of a workplace injury. One of Mr. Elias' employees entered a tank for the purpose of cleaning it out. As a result of experiencing some cyanide fumes, he then became permanently and severely disabled with brain injury. He just sort of voluntarily, out of, you know, good measure, a good employee, entered the tank to clean out the cyanide. Generally, I think that's the case. He wasn't told and directed to go do this? There was a meeting earlier in the day. The parties, the crew, met with Mr. Elias. They discussed what needed to be done. Mr. Elias told— That's beyond me. That's really beside me. Yeah. Okay. I mean, I just, you know, just to be— Aren't we way down the line? The Idaho Supreme Court now has ruled, and so what's the issue here? I mean, are we—do we—the Idaho Supreme Court ruled that the district court could do what it— I mean, the Idaho trial court could do what it did. Yeah. So where are we now? I mean, we can go back and talk about the prior fact, but that's all been taken care of now. Yeah. So where are we now? Dominguez asserts that Rooker-Feldman applies and that we're barred from asking this court to review the decision of the state court, district court, as well as the Supreme Court. Well, we're not doing that. How about res judicata? I mean, if the state court is—how do we look at that decision by the Idaho Supreme Court? Well, I don't think it entitles this court or the bankruptcy court to show and find preclusive effect because of the following. This court looks at the state law to determine what the effect of that default judgment is going to be. That seems to be a finding in a number of our cases. If this were a federal court judgment, it would be a different situation, but we look to the state of Idaho to determine the preclusive effect of this default judgment. Our contention is that if you look at the five factors that are identified in Idaho law, and the bankruptcy judge reviewed one case that discussed that, the five factors don't exist because the case was never actually litigated before a trier of fact. It went by default judgment. And when you look at some of this court's— That's not your argument that you advance in this blue brief. Pardon? That's not the argument that you advanced in the blue brief. I think at the time we first brought our appeal, we were then pending our decision before the Idaho court. Did you ask? You didn't make it? The argument you just stated is not in this brief. I think if you look at the second issue raised, that there is an issue raised about the preclusive effect of the state court judgment. But you didn't argue here that a default judgment cannot satisfy the non-dischargeability standards. Well, we did. We didn't support it with very much authority. I think the blue brief— That you can't rely on a default judgment to support non-dischargeability. Right. Is that Idaho law or federal law? Both. Idaho law states we look at five different criteria of the identity of the parties. Was the issue the same? Was it actually litigated? And Idaho law, as well as the law of this circuit, says that we don't afford preclusive effect to a default judgment. And there is a fundamental fairness question that has to be addressed as part of this. Now, to answer your question, Roman numeral small v, this is presented for review, the second one there. Did the bankruptcy court, and in turn the U.S. District Court, err when it ruled the state court default judgment created issue preclusion on the bankruptcy dischargeability issue of Section 523a6? But your argument at the time was that the Superior Court didn't have jurisdiction. That was the argument. That was the primary argument, I agree. Right. That argument failed in front of the Idaho Supreme Court. That's correct. And if we had not raised that question— See, you didn't, you know, there's certain standards for non-dischargeability of this kind of obligation. And I don't see in your brief where you went through and analyzed the issue to show that the standards under Idaho, one, that a default judgment isn't going to do the trick, or two, that the standards under Idaho for this particular statute do not satisfy the non-dischargeability standards. Your whole attack was on the Superior Court didn't have jurisdiction because this was a workers' compensation issue. I would agree that that was the major focus of our work at the time. At the time. Okay, but we did reserve that issue, as I pointed out from the brief just now. Now, if you look at the standards, the standards for whether a cause of action would exist at all would be did the employer commit a willful, unprovoked act of physical aggression. That gets you around the Idaho workers' comp exclusive remedy provision. And the effect of the Bankruptcy Court's decision adopting collateral estoppel, if you would, that the State court default judgment is to equate the mere allegation of willful, unprovoked act of physical aggression with the willful and malicious requirement of 523-86. And I think if we look at this Court's recent pronouncement in Resu, we find that we've got to have some subjective intent to injure, which we do not. We do not have proof of that. We don't have an actually litigated determination as a result of this default judgment. Did you cite in Resu in your blue brief? Not in the blue brief. We cited it in our response to the Appellee's motion to dismiss. I'm quickly surveying the Bankruptcy Court's decision. Did you make this argument to the Bankruptcy Court? Yes. Where did they go wrong, then? Where did the Bankruptcy Court go wrong? Well, first of all, the Bankruptcy Court was correct when they concluded that Elias's criminal conviction did not create issue preclusion. Judge Tapas found that the criminal court conviction had no bearing on this at all. This didn't fit. He then analyzed five different provisions of the five criteria set forth in his Rodriguez case that set forth in his opinion. And he made rather short rifts of three of the major things, saying, without hesitation, I find one, two, and five are found. He said without hesitation. That's right. He said. And where did he err? Well, he erred in concluding that we had had a full and fair opportunity to litigate. You did. That meant him. Excuse me. No, go ahead. The record seems to indicate that discharge counsel and your meeting went into bankruptcy. You abandoned your cause of action. Now, am I wrong in the record? It isn't as though you didn't have an occasion. You were there with counsel, terminated counsel, and you abandoned the case and went to bankruptcy. You made an election. That's correct. Okay. So where is the opportunity to litigate? If you had any opportunity to litigate, you abandoned it in attempt to, if you would, take whatever advantage you had in the bankruptcy code. Well, that precious discharge is an important thing in bankruptcy. Well, of course, but you still have to take with you whatever you created below. Right. How does that amount to not having a full and fair opportunity to litigate? You had notice. In fact, you were there, and you had the opportunity, it seems to me. We did, and we spent. So you concede that factor, then. You did have the full and fair opportunity to litigate. I don't think that constitutes a full and fair opportunity because we were without funds. I want to make sure I'm right here and understand. Who prevented that opportunity? Did anybody force you to abandon your action in the lower court? Economics. Well, where is economics? I don't see him here. He's not here today. Economics is your issue. Well, that bears very heavily on what's full and fair opportunity. We would write a decision on that fact. If you didn't have the money to litigate and, therefore, pulling out, then we'd excuse you from the preclusion. What other Rodriguez factor was not met? I think the one that it talks about was the question actually decided. And it wasn't actually decided. It was simply ruled on.  There was no other. Well, you know, you make certain allegations in the complaint. If you default on it, all those allegations are taken as true. That's generally the rule of procedure. However, if you look at applying and crossing over the effect of this default judgment into the bankruptcy dischargeability context, those principles of fundamental fairness, full and fair opportunity to litigate, and was it actually litigated and decided? Sometimes a debtor has to make that decision. I can't fight this battle any longer. I'll go fight the battle in bankruptcy court and determine and see if I can convince a court, should I be sued over my discharge, whether my acts were willful and malicious under the statute. You're over your time. I'm way out of time. May it please the Court. My name is Scott Smith, and I represent Scott Dominguez. To begin, with regard to the prior argument, I just want to say that I think I have met high-powered attorneys from Pocatello. I'm sure they're there. I'm sure they're from Pocatello. With regard to this case, I think that the facts and circumstances that we're dealing with right here are quite normal and can be easily resolved based on federal Ninth Circuit case law. We have a situation where a bankruptcy was filed. A bankruptcy court granted stay relief to permit a court action to continue in state court. We did receive a judgment in that case, acknowledging that it is and was default judgment. Opposing counsel has wrongly suggested that somehow a default judgment does not have preclusive effect. For that, I would point specifically to the Idaho case of Davis v. Parrish at 961 P. 2nd 1198. It was also the case cited by the district court in affirming the bankruptcy court's decision. It does have preclusive effect, and not only are we just sitting here looking at a trial court's decision, but it has gone to the Idaho Supreme Court, who has affirmed it. Not only affirmed it on the jurisdictional question that's been raised in this case, but actually in that particular case, in the appeal, Mr. Elias also attempted to argue the merits somewhat, particularly in regard to the denial of his summary judgment motion before the trial court. And what did the Idaho Supreme Court say? And this is actually the last half, last third of the decision. And they basically said, no, you can't appeal a denial of summary judgment. Also, you did not seek relief in the trial court from the default judgment, so it's not appealable now. We are not going to address the factual issue. I point that out simply to say that the factual issues were resolved with the default judgment. Supreme Court said there was jurisdiction. We're not going to look at those questions. It is enforceable in bankruptcy court. And whether we're talking about issue preclusion or Rooker-Feldman, it seems that the case law in the Ninth Circuit is pretty clear about the fact that it should be enforced. There is some suggestion that Rooker-Feldman may not apply in bankruptcy court. I think that that's too much of a generalized statement. It doesn't apply. Obviously, bankruptcy court has exclusive jurisdiction with regards to issues that are integral to the bankruptcy code, such as stay, relief, and so forth. But based on the Ninth Circuit case of Prunes, you know, in terms of the U.S. Supreme Court of Brogan, when we're talking about non-court issues, which are decided by a state court, they must be given effect in bankruptcy court, as they were in this case. I just want to point out one other thing, and that's with regards to what was or was not briefed or argued in Mr. Elias' briefing before this court. As I read the blue brief, it simply argued that the trial court, the state trial court, lacked jurisdiction. It uses the word preclusion throughout the brief, but the arguments seem to be based entirely and solely upon this jurisdictional question, which was ultimately decided by the Addis-Frank court. I suggest that there really is no other argument there. With regard to the suggestion that the district court or the bankruptcy court somehow got the preclusion doctrine wrong with regards to the differing standards, if they are different or if they are the same, I just point out it wasn't briefed in the blue brief. I also point out, if you look at the district court's decision, affirming the bankruptcy court's decision, in there he specifically states that Mr. Elias brought a single and narrow issue regarding jurisdiction. Again, there's nothing to suggest that they even made that argument to the district court. And again, because it wasn't argued before the district court, I would propose that it's been waived at this level, notwithstanding the fact that it's not argued in the blue brief. And for these reasons, we feel that the bankruptcy court's decision, as affirmed by the district court, should also be affirmed before this court. If there's any questions? I don't hear you. Thank you. Thank you. The matter will be submitted.
judges: Brunetti, Tashima, Paez